```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK



----------------------------X
                             :
RAMON VALDEZ, et al.,        :
                             :    12-CV-1224 (NGG)(LB)
             Plaintiffs,     :
                             :    October 23, 2012
                             :
             V.              :    Brooklyn, New York
                             :
SOMERSTEIN CATERERS OF       :
LAWRENCE, INC. PENSION PLAN, :
et al.,         Defendants.  :
----------------------------X


    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
            BEFORE THE HONORABLE LOIS BLOOM
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:         GARY STONE, ESQ.
                           CHRISTOPHER DAGG, ESQ.




For the Defendant:         JOHN GINSBERG, ESQ.
                           JUSTIN ALEX, ESQ.
                           WILLIAM GARRY, ESQ.
Audio Operator:


Court Transcriber:         ARIA SERVICES, INC.
                           c/o Elizabeth Barron
                           102 Sparrow Ridge Road
                           Carmel, NY 10512
                           (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Civil cause for telephone

2   conference, docket number 12-CV-1224, Valdez, et al. v.

3   Somerstein Caterers of Lawrence, Inc. Pension Plan, et

4   al.

5          Will the parties please state your names for

6   the record?  For plaintiffs?

7          MR. STONE:  For plaintiffs, Gary Stone and

8   Christopher Dagg of South Brooklyn Legal Services, for

9   plaintiffs.

10          THE CLERK:  And for defendants?

11          MR. GARRY:  William J. Garry of Harris Beach

12   of the defendant H&R Convention and Catering.

13          THE CLERK:  And for the Pension Benefit

14   Guaranty Corporation?

15          MR. GINSBERG:  PBGC is not a party to this

16   action but for the Somerstein Caterers of Lawrence,

17   Inc. Pension Plan, from the PBGC as statutory trustee,

18   we have John Ginsberg and Justin Alex.

19          THE CLERK:  Thank you.  The Honorable Lois

20   Bloom presiding.

21          MR. STONE:  I'm sorry, your Honor, there's

22   also someone else appearing.

23          MR. SOMERSTEIN:  Stuart Somerstein.

24          THE CLERK:  The Honorable Lois Bloom

25   presiding.

```
 1              THE COURT:  Okay, let me see if I have

 2    everybody.  Good morning, Mr. Stone, Mr. Gagg -- is

 3    that your last name?

 4              MR. GARRY:  Garry, G-a-r-r-y.

 5              THE COURT:  No, the person that was with Mr.

 6    Stone.  I'm sorry, Mr. Garry, I have you separately.

 7              MR. DAGG:  My name is Chris Dagg, D-a-g-g.

 8              THE COURT:  D-a-g-g, thank you.

 9              MR. DAGG:  Correct.

10              THE COURT:  Good morning, Mr. Garry, good

11    morning, Mr. Ginsberg and -- excuse me?

12              MR. GARRY:  I'm sorry, your Honor, I was

13    telling someone to close the door.

14              THE COURT:  Mr. Ginsberg, Mr. Alex, and for

15    the first time, we have with us one of the parties, Mr.

16    Somerstein?

17              MR. SOMERSTEIN:  I'm not a party to this

18    action, your Honor.  I was asked to call in.

19              THE COURT:  I'm sorry, can you state your

20    full name for the record?

21              MR. SOMERSTEIN:  Stuart Somerstein, S-o-m-e-

22    r-s-t-e-i-n.

23              THE COURT:  Thank you, Mr. Somerstein.  And

24    who asked you to call in?

25              MR. SOMERSTEIN:  Mr. Stone sent me an e-mail
```

```
 1   so I followed instructions.

 2            MR. STONE:  I have no memory of sending an

 3   e-mail to Mr. Somerstein because I don't know his e-

 4   mail address, but I certainly have no objection to him

 5   being --

 6            MR. SOMERSTEIN:  I couldn't have called in

 7   if you didn't give me the instructions.

 8            THE COURT:  Again, let's get to this.  I'm

 9   Magistrate Judge Bloom.  I'm holding this conference

10   today.

11            At the last conference and as clarified in a

12   letter, the PBGC informed the Court that it anticipates

13   initiating estimated benefit payments for the

14   plaintiffs as well as other workers who were formerly

15   employed by Somerstein Caterers and Water's Edge in or

16   around October, 2012.  That's ECF document number 20.

17            PBGC's formal determinations are made after

18   their actuaries and auditors complete their review.

19   That's stated in the letter.  It's also stated that

20   plaintiff may appeal the determinations through the

21   PBGC appeals board.  The Court stayed the matter to see

22   if the PBGC decision would affect, in essence moot out

23   the case.  And the Court directed defendants to produce

24   to plaintiffs any plan documents and the contract of

25   sale and closing agreement by August 15$^{th}$, 2012.
```

```
 1            Since the last conference, plaintiffs

 2    withdrew their claim against Jay Jadeja which is ECF

 3    entry number 21.  The parties filed a joint 25(f)

 4    report, which provides that if the case continues

 5    beyond today's conference, the parties expect to file

 6    their dispositive pre-answer motions and the parties

 7    will seek to postpone any discovery until after those

 8    motions are adjudicated.

 9            So as far as you, Mr. Somerstein, according

10    to the attorney for the private defendants, that's Mr.

11    Garry, H&R Convention and Catering and Quinn Restaurant

12    sued Mariana Somerstein, Stuart Somerstein and

13    Somerstein Caterers of Lawrence, Inc. and the SCL

14    Pension Plan for failing to put $900,000 into the

15    pension plan, and that's pending in a separate case,

16    which is H&R Convention and Catering Corp. v.

17    Somerstein, 12-CV-1425.  That's before Judge Weinstein

18    and Magistrate Judge Reyes, and that's an ERISA and

19    breach of contract case.

20            There is a pending motion for default in

21    that case against Mariana Somerstein.  Stuart

22    Somerstein has answered in that case and the parties

23    were to meet for a settlement conference on October

24    12th, and if the case was not settled, to file a

25    proposed discovery schedule.  The parties filed a
```

1   stipulation in that case voluntarily dismissing

2   plaintiff's claim that PBGC must assume responsibility

3   for the plan as moot.  That's document ECF 60 in that

4   case.

5          So my questions here -- first, Mr. Stone or

6   Mr. Ginsberg, has PBGC issued the estimated benefits?

7          MR. GINSBERG:  This is Mr. Ginsberg.  I'm

8   going to let my colleague, Justin Alex, answer this.

9          THE COURT:  Thank you, Mr. Alex.

10         MR. ALEX:  Good morning, your Honor.  I'll

11  address each of the three plaintiffs individually.

12  First, to Mr. Trujillo, PBGC has processed his benefit

13  application and will send him his first payment on

14  November 1st, 2012.

15         The second plaintiff, Mr. Valdez --

16         THE COURT:  Wait, before we move off

17  Trujillo, he hasn't been notified of this or he has?

18         MR. ALEX:  He has received notification of

19  his benefit amount.

20         THE COURT:  Okay.

21         MR. ALEX:  I'm not sure if he's been

22  notified that he'll receive his first payment on

23  November 1st.

24         THE COURT:  Thank you.

25         MR. STONE:  Your Honor, this is Gary Stone

1   speaking.  I spoke to him -- Mr. Trujillo this morning,

2   and he said that he was told by telephone that he would

3   receive a check and he should expect it by November 7th.

4               THE COURT:  Again, that it's going to be

5   processed by November 1st, I guess they're building in a

6   little time for the U.S. mail to deliver it.  But he's

7   been given notice of the amount and he has been given

8   notice that it will start being paid on a monthly basis

9   November 1st, 2012.  Is that correct, Mr. Stone?

10              MR. STONE:  Correct.

11              THE COURT:  Okay, continue on, Mr. Alex.

12              MR. ALEX:  Now, Mr. Valdez's benefit

13  application is currently being processed.  He asked for

14  a calculation of his joint and survivor annuity amount,

15  which PBGC is in the process of giving him.  Once he

16  gets that, if he completes his application by November

17  9th, PBGC will be in a position to begin payments to him

18  on December 1st, 2012.

19              THE COURT:  So, again, tell me what he must

20  complete?

21              MR. ALEX:  Well, his application right now

22  is incomplete because he hasn't elected the form of

23  annuity, I guess you could put it, that he wants.  He's

24  asked for a calculation of a joint and survivor annuity

25  with an option for his wife to receive a benefit, which

1  PBGC is currently working on.

2          THE COURT:  But what is incomplete about the

3  application, the election?

4          MR. ALEX:  Yes, your Honor.

5          THE COURT:  Okay.  And if he completes the

6  application by November 9th, you said?

7          MR. ALEX:  Yes, your Honor, he will be in a

8  position to receive payments starting December 1st,

9  2012.

10          THE COURT:  Okay.  Mr. Stone, has Mr. Valdez

11  been made aware of what Mr. Alex is stating?

12          MR. STONE:  Not exactly.  We submitted an

13  application in which there was no box checked asserting

14  spousal election because the forms (ui), the absence of

15  an election, the form of benefit that Mr. Valdez wants

16  will take place.  In other words, his wife, because of

17  the (ui), will automatically be provided a survivor

18  benefit.  I was unaware of his need for any further

19  processing --

20          THE COURT:  Well, now you've been made aware

21  and I'm hopeful that you'll get in touch with your

22  client.  And I don't know the first thing about what he

23  was sent but I've been informed by Mr. Alex that if he

24  completes his form by November 9th, he'll start

25  receiving the benefits by 12/1.

1          MR. STONE:  Representing Mr. Valdez, I will

2    say that he certainly does elect for his wife to

3    receive a joint and survivor annuity and he does not

4    waive the right.

5          THE COURT:  But of course, an oral election

6    is not going to complete the form, Mr. Stone.  Let's

7    not make this more complicated than it needs to be.  If

8    you're disputing the amount, that's a different story.

9    But if Mr. Alex says that there needs to be something

10   on the form resubmitted by November 9th, how easy can

11   that be?  Get your client to resubmit the form and then

12   he'll have his benefits by December 1st.  Why should

13   we --

14         MR. STONE:  Anything -- he will certainly

15   submit to expedite receipt of checks.

16         THE COURT:  Well, that's exactly what I'm

17   saying, that if your client didn't bring this to your

18   attention, instead of fighting with Mr. Alex about

19   whether or not the law provides that it's automatic,

20   let's just get the form re-filled out and faxed over to

21   Mr. Alex's attention and get this done.  Okay.

22         MR. STONE:  My point, your Honor, is that

23   there was no point to delay any further.  This is the

24   first I heard that there was a need to hold up -- hold

25   up the application --

```
 1                THE COURT:  Mr. Stone, Mr. Stone, Mr. Stone,

 2   excuse me.

 3                MR. STONE:  I don't --

 4                THE COURT:  Mr. Stone, when we're on a phone

 5   conference, you're going to have to take some verbal

 6   cues.  I can't speak over you.  That doesn't do

 7   anything for us.  All I'm saying is, whether you knew

 8   it or you didn't know it, let's get it done.  And all

 9   it involves is resubmitting a form, and you're going to

10   argue with me that there's no need to hold up the

11   benefit, when they just said as long as they get this

12   by November 9th, he'll get his payment by December 1st?

13   You think it could be done any quicker by you arguing

14   here?

15                As to Calderon, what's the status, Mr. Alex?

16                MR. ALEX:  Yes, your Honor.  Mr. Calderon is

17   the youngest plaintiff, and as I understand it, he has

18   not actually submitted an application for his benefits

19   yet.  And until he does that, PBGC cannot proceed with

20   determining whether he's entitled to a benefit and if

21   so, how much that benefit is.

22                THE COURT:  And he worked there five years

23   compared to the other two, who worked over twenty.

24                MR. ALEX:  I'm not sure about that, your

25   Honor.
```

1              THE COURT:  Mr. Stone, what's your position

2    with respect to Calderon?

3              MR. STONE:  Mr. Calderon has not made an

4    application yet.  He's not yet reached retirement age.

5    I will confer with him but last time I spoke to him, he

6    was ready to wait before applying for benefits.  I will

7    speak with him and confirm that, just to be sure.

8              THE COURT:  Okay.  The effort here was to

9    see whether or not the determinations made by PBGC

10   would moot this case.  So I know that you're going to

11   need to confer with your clients on that, Mr. Stone,

12   but that's what I wanted to address on today's

13   conference call.

14             Mr. Stone?

15             MR. STONE:  Yes.  Mr. Calderon -- there's

16   simply a misunderstanding.  I believe Mr. Calderon

17   would not apply ordinarily, unless and until he was

18   ready to actually receive a benefit.  The longer he

19   waits, the higher the monthly benefit will be.

20             THE COURT:  I understand.  What I'm saying

21   to you is, you have an action pending here on behalf of

22   three plaintiffs.  You're suing Somerstein Caterers.

23   PBGC, as they said when they noted their appearance,

24   are not parties to the lawsuit, but they're the ones

25   that are looking to move to dismiss the case and to

1   stop any discovery.

2           You then have in Mr. Garry's clients, and

3   I'm not sure what Mr. Garry's clients are going to add

4   to the mix here.  But, again, my interest is to see

5   what sort of deadlines I'm setting and how we're going

6   to proceed.  I'm interested in Mr. Valdez, Mr. Trujillo

7   and Mr. Calderon being consulted so that they're not

8   agreeing to discontinue the case without them knowing

9   what that means for them.

10          As far as my notes from the prior case, I

11  was told that there were eighty, approximately eighty

12  plan participants.  But right now, we have three named

13  plaintiffs.  We have the defendants who I believe were

14  the subsequent purchasers, who are involved in another

15  lawsuit that's before Judge Weinstein.

16          And from what I've seen on the docket, those

17  cases were supposed to meet for settlement conference,

18  and if not, discovery would be scheduled, and that's

19  really of no moment here because it's really Valdez,

20  Trujillo and Calderon here, it's not the same H&R

21  Convention and Catering or Quinn people in this case.

22          So what do you want to do here, Mr. Stone,

23  and how long do you need to do it?

24          MR. STONE:  There are two main issues.  One

25  is simply getting the clients the benefits.  I'm

```
1   actually very pleased that PBGC has moved forward on

2   the applications of Trujillo and Valdez.  I'm

3   optimistic, actually, that within a couple of months,

4   they should both be receiving benefits.

5              THE COURT:  Well, it's not a couple of

6   months.  One is going to be December 1st and the other

7   is going to be November 1st.  So that's not a couple of

8   months, that's like a couple of weeks on Mr. Trujillo.

9   And assuming that you're going to resubmit whatever Mr.

10  Alex has said was incomplete on the application, as

11  long as that's in by November 9th, they're saying he'll

12  receive the benefits December 1st.  So I'm not going to

13  put this off a couple of months.

14             What I'm asking is, first of all, have

15  defendants produced the plan documents, the contract of

16  sale and the closing agreement?

17             MR. STONE:  I have the -- yes, this is Gary

18  Stone speaking.  We have the contract of sale and we

19  have all of those -- we have those documents.  And we

20  have a document that is the pension plan.  It's not

21  dated but I assume that it is the present benefit plan.

22             THE COURT:  Well, the reason why I'm asking

23  that is because, quite frankly, to schedule the

24  defendant's motions and the PBGC response to the

25  private defendants' cross-claims sounds like a complete
```

```
1    waste of everybody's time here.  If Mr. Trujillo is
2    going to get his benefits starting November 1st, and
3    that sounds like what's going to happen, and if Mr.
4    Valdez completes the application and gets it to PBGC by
5    November 9th and starts getting benefits 12/1, and you
6    acknowledge that Mr. Calderon is not of an age that
7    he's going to make an application at this time, well,
8    so what are we doing here?
9                MR. STONE:  Well, first of all, I want to
10   make sure that my clients have check in hand.  I also
11   want to make sure that Mr. Calderon does not want to
12   make an application for an early retirement benefit --
13               THE COURT:  That's fine, that's fine.  Mr.
14   Stone --
15               MR. STONE:  And depending on what he says,
16   you know, confirm that one way or another with PBGC.
17   There's a separate cause of action specifically against
18   the administrator of the pension plan for penalties
19   under ERISA Section 502(c).  That's 29 USC --
20               THE COURT:  Who is the administrator?
21               MR. STONE:  The administrator at present is
22   H&R --
23               MR. GARRY:  That's not true, your Honor.
24               MR. GINSBERG:  We needn't debate this
25   because whomever --
```

1      THE COURT:  Can you please -- excuse me,

2  excuse me.  Can you identify who's speaking because,

3  again, if we have to get this transcribed, I want it to

4  be clear.

5      MR. GINSBERG:  I'm sorry, your Honor.  This

6  is John Ginsberg for the Pension Benefit Guaranty

7  Corporation --

8      THE COURT:  Thank you.  I thought it was.

9  Go ahead.

10      MR. GINSBERG:  -- as trustee of the pension

11  plan.  There is no administrator of the pension plan.

12  PBGC, pursuant to ERISA, succeeds to all powers of the

13  administrator, but the pension plan has been

14  terminated.  So we can debate who the administrator

15  was.  That involves some legal technicalities and I

16  would submit to you that it's not necessary to this

17  action or at least to this discussion.  Whatever

18  administrator we're talking about was the former

19  administrator prior to termination of the pension plan.

20      THE COURT:  Let me make this easy.  How

21  about we have -- excuse me.  How about we have a

22  telephone conference on December 11th at 10:00 in the

23  morning.  By that time, both Mr. Valdez and Mr.

24  Calderon should already have received a check in hand

25  -- I'm sorry, Mr. Valdez and Mr. Trujillo should

1   already have received a check in hand.

2          And I imagine once they start getting their

3   checks, they will continue receiving their checks.  Is

4   that correct?  This is for you, Mr. Alex or Mr.

5   Ginsberg.

6          MR. GINSBERG:  I'm sorry, could you repeat

7   your question, your Honor?

8          THE COURT:  Once they start getting their

9   benefit payments -- so you stated for the record that

10  Mr. Trujillo's was processed and will be paid November

11  1st, 2012.  And if the application is completed by

12  Valdez, he will receive benefits starting on December

13  1st, 2012.  And I said, and they will continue to

14  receive benefit payments, correct?

15         MR. GINSBERG:  That is correct.

16         THE COURT:  So why don't we put this on for

17  a phone conference on December 11th, and I'm going to

18  tell you a phone number to call into, which is a court

19  conference line with a password, and I'll put this out

20  in an order by ECF.  Is everybody available at 10:00?

21         And I don't think we need you, Mr. Stuart

22  Somerstein.  So everybody except Mr. Stuart Somerstein,

23  meaning somebody on behalf of the plaintiffs, whether

24  it's Mr. Dagg or Mr. Stone, Mr. Garry, and Mr. Ginsberg

25  and Mr. Alex, one or both of you.  Is everybody

1   available December 11th at 10:00?

2          MR. GARRY:  William Garry, yes.

3          MR. STONE:  The plaintiffs are ready, that's

4   fine.

5          MR. GINSBERG:  And PBGC is also available,

6   your Honor.

7          THE COURT:  Okay, very good.  So I'm putting

8   this over for a conference.  I'm asking you, Mr. Stone,

9   to meet with your clients, to get whatever it is

10  necessary so that Mr. Valdez starts getting his

11  benefits, they're saying by November 9th.

12         We do have Mr. Alex on the line, so if

13  there's any confusion about what needs to be

14  resubmitted before you get off the line or call him

15  right back.  Make sure you know.  Get Mr. Valdez into

16  your office, discuss the matter with Mr. Calderon,

17  about whether he's going to apply for any benefits or

18  not.

19         Again, by that time, either we're going to

20  say the case is going to be resolved or we're going to

21  schedule the defendants' motions.  That's what we're

22  going to do at the next conference, okay?

23         I am giving this amount of time

24  understanding, Mr. Stone, that you want your clients to

25  have the check in hand.  And I'm giving you until the

1  11th because even if the payment is started on 12/1, it

2  should be in hand by the 11th.  So speak to your client

3  at least the day before to make sure.  Then if there's

4  anything that I'm missing, you can alert me before the

5  conference.

6         If you could send me -- if there's anything

7  that's going to change what I'm expecting to happen,

8  which is either the case is going to be discontinued or

9  I'm going to be scheduling the defendants, who have

10  asked to make motions -- I'm scheduling that motion at

11  the next conference.  If there's anything else that's

12  different, feel free to give me a letter to tell me

13  what's different by December 6th.

14         Likewise, Mr. Stone, if everybody has the

15  check in hand and you don't think we need the telephone

16  conference and you're going to discontinue the action,

17  you could just contact the defendants' counsel and say

18  that you're going to stipulate to discontinue the case.

19  And as long as I get that letter by the end of the

20  prior week, I'll cancel the telephone conference on the

21  11th, okay?

22         So I'm writing down the Valdez v. Somerstein

23  Caterers is adjourned until December 11th at 10:00 by

24  telephone.  I'm going to give you the phone number now

25  but I'll put it in the order, just to make sure that

1   you have it.  It's a conference call line.  It's 718-

2   403-5340.  You need to press the access code, which is

3   983, and then the pound sign, and then it will ask you

4   for a pass code.  That will be 2170 and, again, the

5   pound sign.

6              So I'll expect the two defendants -- well,

7   Mr. Garry on behalf of the Sing/H&R Convention

8   defendants, and on behalf of Somerstein Caterers, not a

9   party but the PBGC attorneys, as well as Mr. Stone to

10  all call into that line and be on at 10:00 on December

11  11th.

12             Is there anything else that needs to be

13  addressed on behalf of plaintiffs, Mr. Stone?

14             MR. STONE:  No, your Honor.

15             THE COURT:  Is there anything further that

16  needs to be addressed on behalf of the Somerstein

17  Caterers, who are no longer in business but it is the

18  Pension Benefit Guaranty Corporation who has appeared?

19  Mr. Ginsberg or Mr. Alex, anything further?

20             MR. GINSBERG:  No, your Honor.

21             THE COURT:  Anything further on behalf of

22  the H&R Convention/Sing defendants, Mr. Garry?

23             MR. GARRY:  No, your Honor.

24             THE COURT:  Then I'll look forward to

25  hearing from all of you that the case has reached a

```
 1   conclusion, and if not, we'll deal with the next events

 2   on December 11ᵗʰ at 10:00 a.m.

 3              Thank you very much.  Good luck to

 4   everybody.  Thank you.

 5                    *  *  *  *  *  *  *  *  *

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    October 25, 2012